IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-00223-PAB-KMT

MELANIE M. VINEZ,

      Plaintiff,

v.

SKY CHEFS, INC.,

      Defendant.

_____

**ORDER**
_____

      This matter is before the Court on the Motion for Summary Judgment [Docket No. 26] filed by defendant Sky Chefs, Inc. ("Sky Chefs").  This Court has subject matter jurisdiction over plaintiff Melanie Vinez' federal law claims pursuant to 28 U.S.C. § 1331 and, for purposes of resolving this motion, jurisdiction over Ms. Vinez' state law claim pursuant to § 1367.

**I. BACKGROUND**[1]

      Sky Chefs provides catering and other services to airlines and retail customers. Docket No. 26 at 2, ¶ 1.  Sky Chefs serves airlines such as United, Delta, and American out of its Denver Customer Service Center ("Denver CSC"), located at Denver International Airport ("DIA").  *Id.* at 2, ¶ 2.  Sky Chefs' Human Resources Manager Cheryl Williams states that Sky Chefs' policy is to provide qualifying employees with leave under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, including

---

[1]The following facts are undisputed unless otherwise indicated.

a maximum of twelve weeks for employees with serious health conditions.  Docket No.
26 at 3, ¶ 5; *see also* § 2612(a)(1)(D).  When an employee has a disability as defined
by the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Sky Chefs'
policy is to evaluate the employee's disability and potentially provide the employee a
reasonable accommodation.  *Id.* at 3, ¶ 5.  In some cases, Sky Chefs grants disabled
employees medical leave as a reasonable accommodation.  Docket No. 26 at 3, ¶¶ 5-6.

Sky Chefs' Reduction in Force ("RIF") policy as applicable to management
employees stated, among other things, that, when a RIF occurred, "[e]ach employee's
skills, abilities, experience, responsibilities and performance should be reviewed and
compared to each relevant position's requirements.  This analysis allows for a well-
thought out determination as to the best qualified employees to fill the remaining
positions."  Docket No. 36-8 at 2.[2]

In June 2010, Sky Chefs hired plaintiff Melanie Vinez as a Customer Service
Manager/Transportation Manager ("TM")[3] at the Denver CSC.  Docket No. 41 at 6, ¶ 2.
Ms. Vinez was the only TM at the Denver CSC.  Docket No. 26 at 4, ¶ 10.
Approximately 70 percent of Ms. Vinez' job consisted of work on the production floor, in
the field, and on the docks, which required her to carry boxes weighing more than 25
pounds, move galleys that weighed 75 pounds, and move heavy pallets.  *Id.* at 3, ¶¶ 8-

---

[2]Although Sky Chefs argues that this document is unauthenticated, the Court
need not resolve this argument in resolving the present motion.

[3]Ms. Vinez states that her official title was "Transportation Manager," *see, e.g.*,
Docket No. 36-2 at 1, ¶ 2, whereas Sky Chefs refers to Ms. Vinez' position as
"Customer Service Manager/Transportation Manager."  Docket No. 26 at 3, ¶ 7.  The
parties appear to reference the same position.

9.  The remainder of Ms. Vinez' job consisted of administrative work.  *Id.*

In April 2011, Ms. Vinez began to feel ill and was having difficulty sleeping and eating.  *Id.* at 4, ¶ 11.  In June 2011, Ms. Vinez was diagnosed with breast cancer, which her doctors determined required surgery.  *Id.* at 4, ¶ 12.  Ms. Vinez and her healthcare provider completed an application for FMLA leave and provided it to Sky Chefs.  *Id.* at 4, ¶ 13; Docket No. 26-3 at 2, ¶ 8.  Sky Chefs granted Ms. Vinez' application.  Prior to starting her FMLA leave, Ms. Vinez met with Ms. Williams and her supervisor Bill Brock.  Docket No. 26-1 at 10, p. 83:5-10.  Mr. Brock explained that, due to the nature of the TM position, Sky Chefs would have to fill the position with another employee.  *Id.* at 10, pp. 83:20-84:10.  He assured Ms. Vinez that she would nonetheless have a similar position upon her return to work.  *Id.*  She began her FMLA leave on June 20, 2011.  Docket No. 26 at 4, ¶ 14.  Shortly thereafter, Sky Chefs filled the TM position with another employee.  Docket No. 26-3 at 2, ¶ 10.

Ms. Vinez initially hoped that she would be able to return to work within six weeks after her surgery and perhaps work for a few weeks between treatments, but realized that she would not be able to resume work until she completed her treatment. Docket No. 26-1 at 11, pp. 85:24-86:25.  Ms. Vinez exhausted her twelve weeks of FMLA leave in September 2011.  Docket No. 26-3 at 2, ¶ 11; Docket No. 26-1 at 10, p. 81:4-11.  Pursuant to company policy, Sky Chefs then granted Ms. Vinez continuing medical leave as an accommodation under the ADA.  Docket No. 26 at 5, ¶ 21; *see also* Docket No. 26-5 at 6, p. 52:10-16.  While on approved medical leave, Ms. Vinez continued to receive Sky Chefs' employee benefits, including health insurance and

3

disability.  Docket No. 26-1 at 10, p.81:21-25.  Ms. Williams states that it was her intention and the intention of Ms. Vinez' supervisors to reinstate Ms. Vinez after she returned from medical leave.  Docket No. 26-3 at 2, ¶ 12.  Ms. Vinez argues that the circumstances surrounding her layoff raise doubts as to the truth of Ms. Williams' statement.  Docket No. 36 at 3, ¶ 23.

In early June 2012, Robert Mower assumed the position of General Manager at the Denver CSC.  Docket No. 26-2 at 1, ¶ 1.  On June 18, 2012, Ms. Vinez' physician determined that she was physically cleared to return to work.  Docket No. 36-2 at 1, ¶ 6; Docket No. 38 at 2, ¶ 17;  *see also* Docket No. 26-1 at 10, p. 82:4-17;  *id.* at 11, p. 87:6-11; Docket No. 36-1 at 1.[4]  On June 18, 2012, Ms. Vinez relayed this information to Ms. Williams over the phone.  Docket No. 36-2 at 2, ¶¶ 7-8; Docket No. 36 at 5, ¶ 1.  On June 19, 2012, Ms. Vinez met with Ms. Williams and was briefly introduced to Mr. Mower.  Docket No. 36-2 at 2, ¶ 10.  Ms. Williams told Mr. Mower that Ms. Vinez "had just been cleared from medical leave and was coming back to work."  *Id.*; *see also* Docket No. 36-1 at 2, p. 10:4-24.[5]

---

[4]Sky Chefs challenges the authenticity of exhibit three [Docket No. 36-3] to Ms. Vinez' response, Docket No. 42 at 1, which is a document entitled Work Status Report. The Work Status Report appears to have been completed by Dr. David Schnur and states that Ms. Vinez can return to work with some lifting restrictions "within pain tolerance."  Docket No. 36-3.  Ms. Vinez' affidavit states that Dr. Schnur completed the Work Status Report and that it is attached to her response brief as exhibit three. Docket No. 36-2 at 1.  However, because Sky Chefs admits that Ms. Vinez was cleared to return to work as of June 18, 2012, the Court need not consider the Work Status Report or Sky Chefs' authenticity argument in resolving this motion.

[5]Sky Chefs argues that the Court should not consider Ms. Vinez' affidavit because it is "uncorroborated."  Docket No. 38 at 6.  Sky Chefs misstates the standard for evaluating a nonmovant's affidavit at summary judgment.  A nonmovant's affidavit "must be based upon personal knowledge and set forth facts that would be admissible

Before July 2012, the management structure at Sky Chefs' CSCs had three levels.  The Food Production Manager ("FPM"), TM, E&S Manager, and Materials Manager all reported to the Director of Operations, who in turn reported to the General Manager.  Docket No. 36 at 6, ¶ 11.  On July 2, 2012, Sky Chefs informed senior management at the Denver CSC, including Mr. Mower, of a corporate restructuring plan entitled "Project Laser."  *Id.* at 6, ¶ 7.  Project Laser required that each Sky Chefs location eliminate the Director of Operations position, resulting in the FPM, TM, E&S Manager, and Materials Manager reporting directly to the General Manager.  *Id.* at 6, ¶¶ 11-12; Docket No. 36-7 at 8-9, pp. 24:20-25:1; *see also* Docket No. 32-1 at 1.[6]  One of the goals of Project Laser was to ensure that the "right people" filled each of the four manager positions.  Docket No. 36-7 at 26, p.70:2-11.  On July 2, 2012, Mr. Mower received the Project Laser implementation document.  Docket No. 36 at 7, ¶ 18.  The document [Docket No. 32-1] stated, among other things, that the person currently

in evidence; conclusory and self-serving affidavits are not sufficient."  *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995).  To the extent Ms. Vinez' affidavit recounts conversations she witnessed between Ms. Williams and Mr. Mower or conversations she had with Ms. Williams, her affidavit sufficiently evidences personal knowledge of such conversations.  Because Ms. Vinez' affidavit evidences sufficient personal knowledge, the fact that Sky Chefs disputes the content of these conversations does not require Ms. Vinez to present evidence corroborating her recollection.  *Cf. Salguero v. City of Clovis*, 366 F.3d 1168, 1177 n.4 (10th Cir. 2004) ("[plaintiff's] assertions are not supported in the record nor does Salguero's affidavit demonstrate any personal knowledge or corroborating evidence").  Because the Court must view the facts in the light most favorable to Ms. Vinez, the Court, for purposes of resolving this motion, adopts Ms. Vinez' recollection of the various conversations she had with Sky Chefs management.

[6]Docket No. 32 and all attached exhibits were stricken pursuant to the Court's February 11, 2015 minute order [Docket No. 34].  Ms. Vinez failed to refile those exhibits with her conforming response brief.  Nonetheless, the Court elects to consider the stricken exhibits in resolving this motion.

occupying the Director of Operations position "will be 1) re-assigned to Dept Manager or 2) placed on Special Assignment (NY and MSP) or 3) RIF'd." Docket No. 32-1 at 5; Docket No. 36 at 7, ¶ 18 (citing Docket No. 32-1). Derek Moon was the Director of Operations at the Denver CSC before the position was eliminated. Docket No. 36 at 7, ¶ 13.

As of June 18, 2012, the TM position at the Denver CSC was filled. Docket No. 26 at 7, ¶ 32. Ms. Williams states that she actively sought to find a position for Ms. Vinez, including discussing with Mr. Mower the possibility of creating a new p.m. manager on duty position ("PM MOD") for Ms. Vinez. Docket No. 26-3 at 2, ¶ 13.[7] Ms. Vinez asserts that, on July 3, 2012, Ms. Williams promised her the PM MOD position, Docket No. 36-2 at 3, ¶ 12, an assertion that Sky Chefs disputes. Mr. Mower testified that the only reason he considered creating the PM MOD position was to facilitate Ms. Vinez' return to work, but that he ultimately decided not to create the new position for financial reasons, specifically "We had never had a position like previous to thinking about having a position like that. We didn't need it. We didn't need it. It wasn't an operational necessity to have." Docket No. 26-7 at 4, pp. 25:23-26:24; Docket No. 26-2 at 1-2, ¶ 5. Ms. Williams testified:

---

[7]Ms. Vinez does not cite any evidence directly disputing these facts, instead arguing that the totality of the evidence suggests that Sky Chefs "never intended to return Ms. Vinez to work." Docket No. 36 at 4, ¶¶ 32-34. Pursuant to this Court's Practice Standards, such arguments are insufficient to create a dispute of fact as to those statements contained in paragraphs 32-34 of Sky Chef's statement of undisputed facts. *See* Judge Philip A. Brimmer, Practice Standards (Civil cases) § III.F.3.b.iv (stating that any denial of a stated fact "shall be accompanied by . . . a **specific reference** to material in the record supporting the denial"). Thus, the Court considers the facts in paragraphs 32-34 admitted.

Q  What ultimately happened to the P.M. MOD position?
A  It was eliminated due to the Laser Project.
Q  So - -
A  The concept, the idea of it, because it was never a formal position that was created.  But the concept, that was the plan for Mel, but that plan was eliminated due to the Laser Project.

Docket No. 36-5 at 6, p. 68:1-7.

The parties dispute whether, at the time Ms. Vinez was ready to return to work, there were any other open positions at the Denver CSC for which Ms. Vinez was qualified.  Docket No. 26 at 7, ¶ 36; Docket No. 36 at 4, ¶ 36.  The parties agree that, as of June 18, 2012, an FPM position – a position lateral to the TM position – was vacant at the Denver CSC.  Docket No. 36 at 5, ¶ 2.  Two to three weeks after Mr. Mower learned about the Project Laser restructuring plan, he offered the FPM position to Mr. Moon.  Docket No. 36 at 11, ¶ 39.  Karen Damerow, Sky Chefs' Fed. R. Civ. P. 30(b)(6) witness testified that Mr. Mower felt that Mr. Moon and the other individuals filling the manager positions "were the best performing people [and] that they were the right people for the role."  Docket No. 36-7 at 30, p. 75:13-17.  Mr. Moon notified Mr. Mower that he would accept the FPM position.  Docket No. 36-6 at 12, p. 20:12-16.  Mr. Mower testified that he did not consider offering Ms. Vinez the FPM position.  *Id.* at 12, p. 20:17-21.

The parties dispute whether Mr. Mower knew that Ms. Vinez was prepared to return to work before or after offering Mr. Moon the FPM position.  Mr. Mower testified that he spoke with Mr. Moon about taking the FPM position prior to learning that Ms. Vinez was interested in returning to work.  Docket No. 26-7 at 4, pp. 26:25-27:8; *see also id.* at 4, pp. 27:19-28:16.  Ms. Vinez asserts that, on June 19, 2012, Mr. Mower

7

learned that she was ready to resume work during his conversation with Ms. Williams and Ms. Vinez.  Docket No. 36-2 at 2, ¶ 10.  Ms. Vinez asserts that, because Mr. Mower did not consider creating the PM MOD position until he knew she was able to return to work, Docket No. 26-7 at 4, p. 26:22-23, and because, on July 3, 2012, Ms. Williams offered her the PM MOD position, Docket No. 36-2 at 3, ¶ 12, Mr. Mower knew prior to July 3, 2012 that Ms. Vinez was able to return to work.  Docket No. 36 at 12, ¶¶ 44-45.  Ms. Williams' deposition testimony contains additional support for this assertion.  Although Ms. Williams denies offering Ms. Vinez the position, she indicates that, prior to discussing the position with Ms. Vinez, she had a conversation about the concept of a PM MOD position with Mr. Mower.  Docket No. 26-5 at 8, pp. 65:16-66:5.

Ms. Vinez' affidavit states that, on August 8, 2012, Ms. Williams called her and informed her that Sky Chefs was undergoing a restructuring:

> She informed me that all of the directors of operation positions were being phased out and that the company would only fill open vacancies in each location.  She told me that the company was going to lay off all of the employees who were out on medical leaves of leaves of absence or regular leaves of absence unless there was an open position for them in their respective CSCs.

Docket No. 36-2 at 3, ¶ 16.  Sky Chefs contends that this statement in Ms. Vinez' affidavit is uncorroborated and self-serving and does not therefore create a genuine dispute of material fact.  Docket No. 38 at 4.

On September 14, 2012, Sky Chefs laid off Ms. Vinez.  Docket No. 26 at 8, ¶ 39.  Mr. Mower was Sky Chefs' decisionmaker with respect to management positions at the Denver CSC and, as a result, made the decision to lay off Ms. Vinez.  Docket No. 26 at 8, ¶ 41; Docket No. 26-7 at 3, pp. 17:6-18:5.  Mr. Mower testified that the only criteria

8

used to lay off Ms. Vinez was that "we did not have an open position to bring her back to." *Id.* at 3, p. 17:15-16; *see also id.* at 2, p. 14:17-18 ("I didn't have a management position that was available for her to come back to work"); Docket No. 26-2 at 1, ¶ 4. He further states that, had a position similar to the TM position been available, he would have reinstated Ms. Vinez.  Docket No. 26-2 at 2, ¶ 6.  Mr. Mower states that, in making the decision, he did not consider Ms. Vinez' employment history, Ms. Vinez' job performance, or whether Ms. Vinez' DIA security badge was active.[8]  Docket No. 26-2 at 2, ¶ 8.  Ms. Vinez disputes Mr. Mower's stated reason for laying her off only by noting that the FPM position was open at the time she was ready to return to work.  Docket No. 36 at 4, ¶¶ 40-42.

In March 2013, Sky Chefs contacted Ms. Vinez and offered her an International Coordinator position in the Accounts Department, a position which would have paid less than the TM position.  Docket No. 26 at 8, ¶ 44; Docket No. 36 at 4-5, ¶ 44.  Ms. Vinez declined.  On June 12, 2013, at a meeting between Sky Chefs' Director of Human Resources Karen Damerow, Sky Chefs' Western Region Vice President Bob Timplin, and Mr. Brock, Ms. Damerow and Mr. Timplin criticized Mr. Brock's decision to hire Ms. Vinez, referring to her as Sky Chefs' "million dollar baby."  Docket No. 36-11 at 1, ¶ 3. Sky Chefs does not dispute this fact for purposes of the present motion.

On January 27, 2014, Ms. Vinez filed this case.  Docket No. 1.  Ms. Vinez

---

[8]At some point during her medical leave, Sky Chefs' human resources clerk deactivated Ms. Vinez' DIA security badge.  Docket No. 26 at 6, ¶ 25.  Although the parties dispute the circumstances surrounding the deactivation of Ms. Vinez' security badge, such circumstances do not appear to be a basis for Ms. Vinez' claims arising under federal law.  Thus, the Court concludes that the issue is not material to resolving the present motion and will not further discuss it.

asserts a claim for discrimination in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, a claim for discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and what appears to be state law tort claim for outrageous conduct.[9]  *Id.* at 5-6.

## II.  STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim.  *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment*.  Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

However, "[w]hen, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Bausman v. Interstate Brands Corp., * 252 F.3d 1111, 1115 (10th

---

[9]Although the complaint and the final pretrial order are silent as to the source of Ms. Vinez' outrageous conduct claim, the parties characterize it as a tort claim based upon Colorado law.  *See* Docket No. 26 at 17; Docket No. 36 at 25.  The Court finds no reason to disagree with the parties' characterization.

Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998))

(internal quotation marks omitted).  "Once the moving party meets this burden, the

burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a

material matter."  *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d

1513, 1518 (10th Cir. 1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986)).

The nonmoving party may not rest solely on the allegations in the pleadings, but instead

must designate "specific facts showing that there is a genuine issue for trial."  *Celotex,*

477 U.S. at 324; *see* Fed. R. Civ. P. 56(e).  "To avoid summary judgment, the

nonmovant must establish, at a minimum, an inference of the presence of each

element essential to the case."  *Bausman,* 252 F.3d at 1115 (citing *Hulsey v. Kmart,*

*Inc.,* 43 F.3d 555, 557 (10th Cir.1994)).  "In applying this standard, we view all facts and

any reasonable inferences that might be drawn from them in the light most favorable to

the nonmoving party."  *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th

Cir. 1994).

## III.  ANALYSIS

### A.  FMLA

The FMLA requires employers to allow their employees up to twelve weeks of

leave in a year if the leave is requested for, among other things, an employee's "serious

health condition that makes the employee unable to perform the functions of the

position of such employee."  29 U.S.C. § 2612(a)(1)(D).  "At the end of the leave, the

employee must be reinstated to his or her position or to a position equivalent in pay,

benefits, and other terms and conditions of employment."  *Gunnell v. Utah Valley State*

11

*Coll.*, 152 F.3d 1253, 1261 (10th Cir. 1998) (citing § 2614(a)(1)).  Employers are prohibited from interfering with an employee who exercises his or her rights under the FMLA and from discriminating against "any individual for opposing any practice made unlawful by this subchapter."  § 2615(a).  As a result, courts have recognized two theories of recovery on FMLA claims under § 2615: an entitlement or interference theory and a retaliation or discrimination theory.  *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002).  Ms. Vinez asserts her FMLA claim based upon a retaliation or discrimination theory.  Docket No. 36 at 13 (citing § 2615(a)(2)).

There are, generally speaking, two ways in which a plaintiff can prove discrimination.  The first and most common is the *McDonnell Douglas* burden-shifting framework, which applies to claims in which plaintiff has no direct evidence of discrimination.  *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 n.3 (10th Cir. 1997). However, if the employer admits that discrimination played a prominent role in an employment decision or if plaintiff has other direct evidence of discrimination, then the burden-shifting framework may not be necessary.  *Id.*  Although Ms. Vinez refers to certain evidence as "direct evidence" of discrimination under the FMLA, she argues that such evidence is also sufficient to satisfy the three elements of a prima facie case of discrimination under the *McDonnell Douglas* framework.  *See* Docket No. 36 at 14.  The evidence Ms. Vinez refers to as "direct evidence" does not constitute Sky Chefs' admission that her exercise of FMLA rights played a prominent role in its decision to lay off Ms. Vinez.  Therefore, the Court will consider Ms. Vinez' so-called "direct evidence" under the appropriate prongs of the *McDonnell Douglas* burden-shifting framework.

*See, e.g*, *Campbell v. Gambro Healthcare, Inc.*, 447 F. Supp. 2d 1205, 1221 (D. Kan. 2006).

To establish a prima facie case of retaliation under the *McDonnell Douglas* framework, Ms. Vinez must prove that "(1) she engaged in a protected activity; (2) [the employer] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 (10th Cir. 2006). If Ms. Vinez can establish a prima facie case, the burden shifts to Sky Chefs to "demonstrate a legitimate, nonretaliatory reason for its termination decision." *Id.* at 1172. Provided Sky Chefs' reason for terminating Ms. Vinez is not facially prohibited, Ms. Vinez then "must show that there is a genuine dispute of material fact as to whether [Sky Chefs'] explanation[] for terminating her employment [is] pretextual." *Id.*

Sky Chefs does not dispute the first two elements of the prima facie case. Rather, the parties disagree only as to whether Ms. Vinez has established the third element of the prima facie case. The "'critical inquiry' at this prima facie stage is 'whether the plaintiff has demonstrated that the [employer's] action occurred under circumstances which give rise to an inference of unlawful discrimination.'" *Id.* at 1171 (quoting *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002)); *see also Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007) ("We have characterized the showing required to satisfy the third prong under a retaliation theory to be a showing of bad intent or retaliatory motive on the part of the employer."). Temporal proximity between a plaintiff's protected conduct and the adverse action is

evidence of a "causal connection sufficient to justify an inference of retaliatory motive," but temporal proximity alone is sufficient only when the adverse action is "'*very closely* connected in time to the protected activity.'"  *Metzler*, 464 F.3d at 1171 (emphasis in original) (quoting *Anderson v. Coors Brewing*, 181 F.3d 1171, 1179 (10th Cir. 1999)). Absent very close temporal proximity, plaintiff must rely on additional evidence to establish an inference of retaliatory motive.  *Piercy v. Maketa*, 480 F.3d 1192, 1199 (10th Cir. 2007).

Here, Ms. Vinez does not dispute that she exhausted her FMLA leave in September 2011 and was laid off on September 14, 2012, which evidences a gap of more than 11 months between her exercise of FMLA rights and her layoff.  In the Tenth Circuit, a gap of that length is, by itself, insufficient to establish causation.  *See Gebhardt v. Exide Techs.*, 521 F. App'x 653, 658 (10th Cir. 2013) (unpublished) (holding that, where final use of FMLA leave was no later than August 2007 and termination was in September 2008, plaintiff failed to establish causation through temporal proximity); *Piercy*, 480 F.3d at 1198 ("an adverse employment action that happened more than three months after the protected activity was not entitled to a presumption of causation"); *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) ("four month time lag between Connor's participation in protected activity and his termination by itself would not be sufficient to justify an inference of causation").[10]

---

[10] *See generally Gruppo v. FedEx Freight Sys., Inc.*, 296 F. App'x 660, 664 (10th Cir. 2008) (applying analysis of racial or religious discrimination to FMLA retaliation claim (citing *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002)).

The Tenth Circuit has suggested that, when an employee is on leave during the time between the protected conduct and an adverse employment action, a longer gap between the two events may nonetheless be sufficient to establish a temporal connection.  *See Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1217 (10th Cir. 2003). In *Wells*, plaintiff filed a complaint with her employer's equal employment opportunity office in November 1995.  *Id.* at 1211.  Plaintiff took approximately three weeks of FMLA leave, briefly returned to work, and then was on leave for an additional four months.  *Id.*  Plaintiff was directed to return to work because her FMLA leave had expired and, when she did so, was quickly transferred to another facility.  *Id.*  Plaintiff argued that there was a causal connection between her November 1995 complaint and her transfer five months later.  *Id.* at 1216.  The Tenth Circuit noted that, ordinarily, a five-month gap between protected activity and adverse action would not, by itself, support an inference of causation because the motivation for retaliation tends to diminish over time.  *Id.* at 1217 ("[w]hen retaliation for an act occurs well after the act, one wonders why the retaliator failed to act sooner").  However, because plaintiff was on leave during the time between the filing of her complaint and subsequent transfer, "[e]ven if Mr. Moston had a desire to retaliate for the November complaints, it did not make sense for him to do so until Plaintiff returned to work."  *Id.*  The Tenth Circuit therefore determined that a jury could draw a retaliatory inference based on the timing of these events.  The unique circumstances upon which the Tenth Circuit's decision was based are not present here.  First, unlike the five-month gap in *Wells*, a full eleven months passed between Ms. Vinez' exercise of FMLA rights and any adverse

15

employment action.  Second, unlike *Wells*, Sky Chefs was not without opportunity to

retaliate against Ms. Vinez if it wished to do so.  For example, Sky Chefs could have

denied Ms. Vinez additional leave once her FMLA leave expired,[11] terminated her at

any point between September 2011 and June 2012, or terminated her immediately after

learning that she was medically cleared to return to work.  *Cf. id.* ("only days after

Plaintiff's return to work in April, the transfer and reassignment were effectuated").

Because Ms. Vinez fails to establish a very close temporal proximity between her

exercise of FMLA rights and her layoff, she must rely on additional evidence to

establish causation.[12]

Plaintiff's additional evidence of retaliatory motive is thin.  Ms. Vinez argues that

she was "treated differently than her co-workers because she was on a medical leave of

absence," which she claims is direct evidence that she was discriminated against for

taking FMLA leave.  Docket No. 36 at 14.  Ms. Vinez fails to identify any similarly

situated co-workers who were treated differently.  Moreover, Ms. Vinez' general

---

[11]In regards to the ADA, "when an employee seeks a leave of absence for treatment and has a good prognosis for recovery, a leave of absence is a reasonable accommodation.  Conversely, when the employee seeks leave, but it is uncertain if or when he will be able to return to work, a leave of absence is not a reasonable accommodation." *Valdez v. McGill*, 462 F. App'x 814, 818 (10th Cir. 2012) (unpublished) (citation omitted).  Thus, although Sky Chefs refers to the additional leave Ms. Vinez took as "ADA" leave, it is unclear that the ADA required Sky Chefs to provide such leave as a reasonable accommodation.

[12]Mr. Mower made the decision to lay off Ms. Vinez at some point between becoming General Manager of the Denver CSC in June 2012 and September 14, 2012, the date that Ms. Vinez was told of her termination.  Thus, the decision to lay off Ms. Vinez was made at least eight months after she exhausted her FMLA leave, a gap which, under Tenth Circuit precedent, does not establish the requisite temporal proximity.  *See Piercy*, 480 F.3d at 1198.

assertion that she was on "medical leave" is insufficiently specific to establish an FMLA

retaliation claim.  After exhausting her FMLA leave in September 2011, Ms. Vinez took

additional medical leave until she was ready to return to work in June 2012.  This

additional medical leave was not FMLA leave, but was medical leave Sky Chefs

granted her pursuant to its own policies.  *See* Docket No. 26-3 at 2, ¶¶ 6-7.  This

additional, non-FMLA medical leave cannot form the basis of an FMLA retaliation claim.

*See Gunnell*, 152 F.3d at 1262 ("an employee who requests FMLA leave would have no

greater protection against his or her employment being terminated for reasons not

related to his or her FMLA request than he or she did before submitting the request").

Ms. Vinez fails to recognize this distinction.

Ms. Vinez fails to adequately articulate a causation theory, and her bare

assertion that Sky Chefs' conduct was retaliatory is insufficient to satisfy her burden.

*See Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1172 (10th Cir. 2007)

(holding that plaintiff's "mere conjecture" was, by itself, insufficient to allow a reasonable

factfinder to infer discriminatory intent).  Ms. Vinez does not account for the fact that the

additional leave could be considered an intervening event undermining her causation

argument.  *See Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 1001-02 (10th Cir.

2011) (noting that evidence of intervening events tends to undermine inference of

retaliatory motive and weaken the causal link (citing *Maestas v. Segura*, 416 F.3d 1182,

1189 (10th Cir. 2005)); *Trujillo-Cummings v. Pub. Serv. Co. of N.M.*, 1999 WL 169336,

at *3 (10th Cir. Mar. 29, 1999) (unpublished) (concluding that intervening positive

employment actions, including employer's approval of work-at-home arrangement,

17

undermined plaintiff's retaliation claim).  Moreover, Ms. Vinez fails to account for the intervening effect of Project Laser.  Although the FPM position was open as of June 18, 2012, it did not remain so up until the date of Ms. Vinez' termination.  Project Laser gave Mr. Mower the choice of either reassigning Mr. Moon to a department manger position or terminating him pursuant to a reduction in force.  *See* Docket No. 32-1 at 5. Ms. Vinez does not dispute that Project Laser caused Mr. Mower to place Mr. Moon in the previously open FPM position.  Ms. Vinez fails to identify any evidence suggesting that, had she not taken FMLA leave, Mr. Mower would have offered the FPM position to someone other than Mr. Moon, much less her.  Ms. Vinez therefore fails to establish that she was treated differently than if she had not taken FMLA leave.  *See Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1317 (10th Cir. 2006) ("The causal-connection inquiry does not focus on what the FMLA or personnel rules required the employer to do, but whether the employer treated an employee differently than it would have if she had not engaged in protected activity.").[13]

Ms. Vinez makes a variety of arguments challenging Mr. Mower's stated reason for terminating her employment, none of which identify sufficient evidence upon which a reasonable juror could conclude that he acted with FMLA-related discriminatory animus or a retaliatory motive.  Ms. Vinez argues that Ms. Damerow, in her capacity as a Rule 30(b)(6) witness, "testified that [Sky Chefs] does not know what criteria were used to

---

[13]Although Ms. Vinez does not argue Sky Chefs acted with discriminatory intent in failing to create the PM MOD position for her, the intervening effect of Project Laser would similarly undercut such an argument.  Moreover, Ms. Vinez does not argue that, once Ms. Williams told Ms. Vinez that she would be given the PM MOD position, *see* Docket No. 36-2 at 3, ¶ 12, the FMLA or ADA prohibited Sky Chefs' managers from changing their mind in light of Project Laser.

identify Ms. Vinez for employment termination," which Ms. Vinez contends contradicts Mr. Mower's deposition testimony that he decided to lay off Ms. Vinez because there were no open positions.  Docket No. 36 at 16-17.  Ms. Vinez argues that, while Ms. Damerow testified that Ms. Vinez was laid off due to corporate restructuring, Mr. Mower testified that Ms. Vinez' layoff was not a result of Project Laser.  *Id.*  Ms. Vinez does not support her argument with specific citation to the record, but instead refers generally to her statement of facts.  It is not incumbent upon the Court to parse the record in search of evidentiary support for her argument.  Moreover, even if Ms. Vinez properly supported her argument, she fails to explain why the asserted contradiction could lead a reasonable juror to conclude that Mr. Mower acted with FMLA-related retaliatory animus.  No such conclusion is apparent to the Court.

Ms. Vinez argues that Mr. Mower's failure to comply with the Project Laser implementation document and the RIF policy in deciding to lay off Ms. Vinez establishes the requisite causal connection.  Docket No. 36 at 17.  Implicit in this argument is the assertion that the Project Laser implementation document and RIF policy applied to Mr. Mower's decision to lay off Ms. Vinez, an assertion which Sky Chefs argues is unsupported.  *See* Docket No. 38 at 5, ¶ 29.  An employee's mere allegation that his employer engaged in a procedural irregularity is insufficient to establish discrimination; rather, the employee "must present evidence that the employer *believed* that a relevant company policy existed, and chose to deviate from the policy in spite of that belief."  *Hysten v. Burlington N. Santa Fe Ry. Co.*, 415 F. App'x 897, 910 (10th Cir. 2011) (unpublished).  Ms. Vinez does not identify, with specific citation to the record, any evidence suggesting that the Project Laser implementation document and

19

RIF policy applied to employees in her situation, namely, an employee returning from extended medical leave whose previous position was no longer vacant, and, more importantly, Ms. Vinez does not identify evidence suggesting that Mr. Mower held such a belief.  *See Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1222 (10th Cir. 2007) (holding that, if decisionmakers did not believe a policy existed, mistake in failing to follow it does not establish pretext).  To the contrary, Mr. Mower testified that Ms. Vinez "was ultimately laid off, but it was not a result of Project Laser."  Docket No. 36-6 at 7, p. 14:1-2.  Thus, Ms. Vinez' arguments that Mr. Mower failed to complete certain documents in implementing Project Laser, that Mr. Mower should have determined whether she was a "high performing individual[]" and considered her for a lesser supervisory position as contemplated by the Project Laser implementation document, or that Mr. Mower did not otherwise follow the RIF policy are irrelevant.

Ms. Vinez also relies on statements made by Ms. Williams and Ms. Damerow in attempting to establish the third element of her prima facie case.  Even seemingly ambiguous comments can support an inference of discrimination if plaintiff can show "a nexus between the allegedly discriminatory statements and the employer's decision." *Tomsic v. State Farm Mut. Auto. Ins. Co.*, 85 F.3d 1472, 1479 (10th Cir. 1996).  On August 8, 2012, Ms. Williams stated that, due to corporate restructuring, "the company was going to lay off all of the employees who were out on medical leaves of absence or regular leaves of absence unless there was an open position for them in their respective CSCs."  Docket No. 36-2 at 3, ¶ 16.  However, Ms. Williams does not specifically reference the FMLA or plaintiff's use of FMLA leave, which was exhausted in September 2011.  Moreover, Ms. Williams was not the decisionmaker with respect to

20

Ms. Vinez' layoff and Ms. Vinez does not provide any reason to ascribe Ms. Williams'
statement to Mr. Mower.  *See Gebhardt*, 521 F. App'x at 658 (holding that assertion
ascribed to plaintiff's supervisor did not create genuine dispute of material fact as to
causation because supervisor was not decisionmaker with regard to plaintiff's
dismissal).  As for Ms. Damerow's June 2013 statement that Mr. Vinez was Sky Chefs'
"million dollar baby," Docket No. 36 at 18, Ms. Vinez does not adequately explain why
she believes a jury could infer FMLA-related animus from this remark.  Ms. Damerow's
remark occurred in June 2013 – nearly eight months after Ms. Vinez was laid off.
Assuming that the remark is probative of Ms. Damerow's retaliatory animus towards Ms.
Vinez, nothing suggests that she possessed such animus at the time Ms. Vinez was
laid off or that Mr. Mower – the decisionmaker with respect to Ms. Vinez' employment –
possessed similar animus.  Moreover, although Ms. Damerow had conversations with
Mr. Mower regarding the decision to lay off Ms. Vinez, Ms. Vinez does not identify
evidence suggesting that Ms. Damerow exerted influence over Mr. Mower's decision to
lay off Ms. Vinez.  Thus, Ms. Damerow's June 2013 statement that Ms. Vinez was Sky
Chefs' "million dollar baby" lacks a sufficient nexus to the employment decision so as to
support an inference of retaliatory animus.  *See Tomsic*, 85 F.3d at 1479.

Ms. Vinez' prima facie case fails for an additional reason.  Ms. Vinez contends
that she has established causation because Mr. Mower knew that she was "on medical
leave for breast cancer."  Docket No.  36 at 16.  However, the Court does not find that
Mr. Mower's general awareness that Ms. Vinez was on "medical leave" is, by itself,
sufficient to establish that Mr. Mower knew that Ms. Vinez exercised her right to FMLA
leave in June through September 2011 and therefore terminated her for that specific

reason.  *See Wood v. Handy & Harman Co.*, 318 F. App'x 602, 606 (10th Cir. 2008)

(unpublished) ("An essential component of causation is the decisionmaker's knowledge

of the protected activity; if knowledge is lacking, then the protected act cannot be said

to have caused the adverse employment action." (citing *Jones v. United Postal Serv.,*

*Inc.*, 502 F.3d 1176, 1195 (10th Cir. 2007))); *Satterlee v. Allen Press, Inc.*, 274 F. App'x

642, 646-47 (10th Cir. 2008) (unpublished) (rejecting FMLA retaliation claim in part

because plaintiff failed to show that person responsible for terminating employee had

knowledge that plaintiff was entitled to FMLA leave).  Ms. Vinez does not, as is her

burden, identify, with specific citation to the record, any evidence tending to establish

that Mr. Mower knew of Ms. Vinez' use of FMLA leave.  Mr. Mower was not employed at

the Denver CSC when Ms. Vinez used her FMLA leave.  Docket No. 36-6 at 3-4, pp.

10:25-11:2.  Although Mr. Mower testified that he learned that Ms. Vinez was on

medical leave and had cancer prior to the decision to lay her off, Docket No. 36-6 at 4,

pp. 10:19-11:11, he testified that he "wasn't sure the date she went on leave.  I knew

she had been on leave for an extended period to time."  *Id.* at 9, p. 17:1-5.  Given Sky

Chefs' policy of granting additional medical leave as an accommodation under the ADA,

the mere fact that Ms. Vinez was on "medical leave" would not necessarily imply to Mr.

Mower that she had at some point exercised her right to FMLA leave.  Even if a

reasonable factfinder could infer such knowledge on his behalf, Ms. Vinez cites no

evidence suggesting that Mr. Mower's decision was based on FMLA leave as opposed

to another reason.  Mr. Mower's affidavit and deposition testimony regarding his

reasons for Ms. Vinez' layoff do not evidence an awareness that she took FMLA leave

in June through September 2011.  Because Ms. Vinez identifies no evidence

22

suggesting that Mr. Mower knew Ms. Vinez had taken FMLA leave, she fails to create a genuine issue of material fact as to whether Mr. Mower acted with FMLA-related retaliatory intent in deciding to lay her off.  Ms. Vinez therefore fails to establish a prima facie case of FMLA retaliation.

The Court recognizes that a plaintiff needs only a "small amount of proof" to establish a prima facie case.  *See Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 539 (10th Cir. 2014) (quotation omitted).  Here, however, Ms. Vinez fails to provide that level of proof.  Ms. Vinez does not provide any evidence that, for example, similarly situated employees were treated differently than she was or that Sky Chefs previously retaliated against her for exercising her FMLA rights – evidence that may otherwise provide a basis upon which to infer that Ms. Vinez was laid off in retaliation for her exercise of FMLA rights.  *See, e.g.*, *Smothers*, 740 F.3d at 541, 544; *Carrero-Ojeda v. Autoridad De Energia Electrica*, 755 F.3d 711, 720 (1st Cir. 2014) (holding that employee failed to evidence "negative comments, complaints, or expressions of reluctance by her superiors or co-workers about her FMLA leave-taking, . . . discussion of her FMLA leave status in performance reviews, etc." that would otherwise lead to conclusion that defendants took FMLA requests into account in terminating employee).  The lack of temporal proximity between her exercise of FMLA rights and her layoff, non-discriminatory intervening events, and the lack of circumstantial evidence that Mr. Mower's decision was somehow motivated by FMLA-related animus would leave a reasonable jury with no basis to infer that Ms. Vinez' layoff was in retaliation for her exercise of FMLA leave.  Because Ms. Vinez fails establish a causal connection between her FMLA activity and her layoff, Sky Chefs' motion for summary judgment as

to this claim will be granted.  *See McGowan v. City of Eufala*, 472 F.3d 736, 747 (10th Cir. 2006) ("If the reason for the claimed adverse action does not flow from a discriminatory motive, it lacks the requisite causal connection to the adverse action.").

### B.  ADA

Ms. Vinez' second claim for relief asserts that Sky Chefs discriminated against her in violation of the ADA.  There are three distinct types of discrimination under the ADA.  *See Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1188 (10th Cir. 2003). Disparate treatment claims are those where a qualified individual with a disability is treated differently because of her disability.  *Id.*  A separate claim of discrimination can be stated under the ADA for failing to provide a reasonable accommodation or, in other words, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual . . . ."  42 U.S.C. § 12112(b)(5)(A); *see, e.g.*, *Smith v. Midland Brake, Inc., a Div. of Echlin, Inc.*, 180 F.3d 1154, 1179 (10th Cir. 1999) (discussing ADA claim for failure to accommodate by offering reassignment to a vacant position).  Last, a disparate impact claim is one in which the plaintiff asserts that a defendant uses "qualification standards . . . or other selection criteria that screen out or tend to screen out an individual with a disability . . . ."  § 12112(b)(6).  Although Ms. Vinez' brief does not explicitly identify the theory upon which she asserts her ADA discrimination claim, she appears to have pled only a disparate impact claim.  Her complaint does not allege, and her response brief does not argue, that Sky Chefs violated the ADA by failing to accommodate her disability by reassigning her to a vacant position or that Sky Chefs engaged in conduct that caused a disparate impact.

Moreover, Ms. Vinez advocates for the application of the traditional three-element prima facie case typically used to evaluate disparate treatment claims under the *McDonnell Douglas* burden-shifting framework, Docket No. 36 at 23 (citing *Smothers*, 740 F.3d at 544), rather than the considerably more complex prima facie framework sometimes used in failure to accommodate by offering reassignment cases.  *See, e.g.*, *Smith*, 180 F.3d at 1179.  Thus, in the absence of argument to the contrary, the Court concludes that Ms. Vinez' second claim for relief is based exclusively on a disparate treatment theory, namely, that she was laid off because of her disability.

ADA disparate treatment claims in which there is no direct evidence of discrimination are subject to the *McDonnell Douglas* burden-shifting analysis.  *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011).  Although Ms. Vinez maintains that she has direct evidence that Sky Chefs discriminated against her on the basis of her disability, she does not contend that this evidence renders her ADA claim outside the purview of the *McDonnell Douglas* framework.  Docket No. 36 at 23-24.  Rather, she argues that this evidence establishes her ADA claim under the *McDonnell Douglas* framework.  Moreover, for the reasons discussed above, the evidence upon which plaintiff relies is not the type that renders the traditional burden-shifting framework unnecessary.  *Cf. Davidson*, 337 F.3d at 1189 (concluding that, because "AOL's explanation for its action established that it relied on Davidson's disability when it refused to hire him," burden-shifting analysis was unnecessary).  The Court will therefore consider Ms. Vinez' "direct evidence" under the appropriate prongs of the *McDonnell Douglas* framework.

To establish a prima facie claim of ADA discrimination on a disparate treatment theory, a plaintiff must show that: "(1) she is disabled as defined by the ADA; (2) she is qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) she suffered discrimination on the basis of her disability." *Hennagir v. Utah Dept. of Corr.*, 587 F.3d 1255, 1261 (10th Cir. 2009).[14]  Although the burden on plaintiff at this stage is not onerous, it is "not empty or perfunctory."  *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323-24 (10th Cir. 1997) (quotation omitted).  After plaintiff has established a prima facie case, the defendant bears the burden of articulating a legitimate, nondiscriminatory reason for its conduct, at which point the burden shifts back to plaintiff to establish that defendant's stated reasons are pretextual.  *C.R. England*, 644 F.3d at 1038.

The Court turns to Ms. Vinez' prima facie case.  The parties agree that Ms. Vinez' breast cancer constitutes a disability under the ADA, Docket No. 41 at 5, ¶ 1, and, for purposes of resolving this motion, the Court assumes, without deciding, that Ms. Vinez has established that she is a qualified individual.  In order to establish the third element, a plaintiff must show that she was laid off "under circumstances which give rise to an inference that the termination was based on [her] disability."  *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 544 (10th Cir. 2014).  Ms. Vinez must therefore "present some affirmative evidence that disability was a determining factor in the employer's decision" such that, if the trier of fact finds such evidence credible, "and the

---

[14]Although the ADA was substantially amended in 2008, the Tenth Circuit has continued to apply this framework to discrimination claims arising after the amendments took effect.  *See, e.g.*, *Tadlock v. Marshall Cnty. HMA, LLC*, 603 F. App'x 693, 702 (10th Cir. 2015).

employer remains silent, she would be entitled to judgment as a matter of law." *Morgan*, 108 F.3d at 1323-24.

In attempting to establish this element, Ms. Vinez relies entirely on her arguments in support of her FMLA claim, asserting, without citation to authority, that "there is no meaningful difference between dismissing Ms. Vinez because of her disability and dismissing Ms. Vinez because she took medical leave to treat that disability." Docket No. 36 at 24-25. Ms. Vinez is both legally and factually incorrect. First, Ms. Vinez' ADA claim and her FMLA claim require her to show different types of discriminatory animus. An ADA discrimination plaintiff must establish that "she was terminated because of her disability," *Butler v. City of Prairie Vill., Kan.*, 172 F.3d 736, 748 (10th Cir. 1999), whereas a plaintiff asserting an FMLA retaliation claim must establish a "causal connection between the protected activity and the adverse action." *Metzler*, 464 F.3d at 1171. Ms. Vinez does not cite any authority – and the Court is aware on none – in support of her implicit argument that the two inquiries are the same. To the contrary, although there may be some factual overlap between the two inquiries, courts generally consider discriminatory intent and retaliatory intent to be distinct concepts. *See, e.g.*, *Stover v. Martinez*, 382 F.3d 1064, 1075 (10th Cir. 2004) (analyzing Title VII discrimination and retaliation claims separately). The Court finds no reason to depart from this general practice. Second, there are considerable factual differences between the two claims. For example, although the temporal proximity between Ms. Vinez' exercise of FMLA rights and her layoff is relevant to her FMLA claim, it does not bear on the question of whether Sky Chefs terminated Ms. Vinez because she had breast cancer. Moreover, in order to establish a prima facie case of

27

FMLA retaliation, Ms. Vinez was required to provide evidence that Mr. Mower was motivated by FMLA-related retaliatory animus, whereas here such animus is irrelevant to determining whether Mr. Mower decided to lay off Ms. Vinez because she suffered from breast cancer.  Ms. Vinez' failure to recognize the differences between her two claims, tailor her arguments accordingly, and identify specific evidence in support of her ADA claim is, by itself, a sufficient reason to conclude that her ADA claim fails for lack of support.  Nonetheless, the Court will consider whether Ms. Vinez' arguments in support of her FMLA claim have any bearing on whether she was laid off because of her disability.

Ms. Vinez argues that Mr. Mower was aware that she was on medical leave for breast cancer.  Docket No. 36 at 16.  However, Mr. Mower's mere awareness of Ms. Vinez' disability is insufficient to establish the requisite discriminatory intent.  *See Ainsworth v. Indep. Sch. Dist. No. 3 of Tulsa Cnty., Okla.*, 232 F. App'x 765, 771 (10th Cir. 2007) (unpublished) ("it does not follow that a reasonable inference of discrimination may be drawn from mere awareness of a disability or that mere awareness is affirmative evidence that may establish the third element of the prima facie case").

As discussed above, Mr. Vinez' attempts to identify contradictions between Ms. Damerow's and Mr. Mower's deposition testimony regarding the reasons for Ms. Vinez' layoff are unsupported and Ms. Vinez does not explain how such contradictions would lead a jury to infer that her disability played a determinative role in Mr. Mower's decision.  No such inference is apparent to the Court.  Ms. Vinez also fails to establish that Mr. Mower's alleged failures to follow the Project Laser implementation document

28

and RIF policy in deciding to lay off Ms. Vinez would lead a jury to the requisite discriminatory inference.

To the extent Ms. Vinez relies on Ms. Williams' August 8, 2012 statement to establish an inference of discrimination, her reliance is misplaced. Ms. Williams' statement indicates that Sky Chefs was laying off employees on medical leave who did not have an open position to return to, not that Sky Chefs was laying off disabled employees because of their disability.[15] Moreover, Ms. Vinez fails to show that whatever discriminatory intent can be inferred from this statement can be ascribed to Mr. Mower. Ms. Damerow's June 2013 comment similarly lacks a sufficient nexus to the decision to lay off Ms. Vinez. *See Melin v. Verizon Business, Inc.*, 595 F. App'x 736, 740 (10th Cir. 2014) (unpublished) (concluding that offensive and derogatory remarks lacked sufficient nexus to adverse employment action).[16]

Sky Chefs argues that Ms. Vinez' arguments fail to account for the fact that Sky Chefs granted her significant leave as an accommodation under the ADA and that, rather than terminating her immediately upon her medical clearance to return to work, Sky Chefs explored the possibility of creating a new position for her. Docket No. 38 at

---

[15]This aspect of Ms. Williams' statement may raise issues relevant to a claim that Sky Chefs failed to provide reasonable accommodation as required by the ADA, but Ms. Vinez asserts no such claim.

[16]Ms. Vinez' reliance on this statement is unavailing for an additional reason. According to Ms. Vinez, on August 8, 2012, Ms. Williams stated that Sky Chefs would lay off employees who were out on medical leave of absence "unless there was an open position open for them in their respective CSCs." Docket No. 36-2 at 3, ¶ 16. However, because Sky Chefs accepted Ms. Vinez' return to work paperwork on July 3, 2012, *id.* at 3, ¶ 12, it is not clear that, as of August 8, 2012, Ms. Vinez fell into the category of an "employee . . . out on medical leave." *See id.* at 3, ¶ 16.

9.  The Court agrees that these facts do not evidence discriminatory animus on the part of Sky Chefs.  *Cf. Ainsworth*, 232 F. App'x at 771-72 ("Ms. Price's mere awareness of Mr. Ainsworth's impairment, particularly when viewed in conjunction with the fact that she continued to give him assignments after gaining that awareness, does not constitute affirmative evidence that disability was a determining factor in her recommendation").  Moreover, neither party identifies evidence that Ms. Vinez' disability would have significantly limited her ability to work or would have otherwise required Sky Chefs to enact reasonable accommodations.  Thus, there exists no basis for a reasonable juror to infer that Mr. Mower laid off Ms. Vinez due to concern over her inability to perform a job or the inconvenience of enacting reasonable accommodations if she were to return to work.

For the foregoing reasons, Ms. Vinez has failed to prove affirmative evidence upon which to conclude that her disability was a "determining factor" in Sky Chefs' decision to terminate her employment.  *See Morgan*, 108 F.3d at 1323-24.[17]

### C.  Pretext

Even if the Court were to analyze the circumstances surrounding Ms. Vinez' layoff as evidence of pretext, Ms. Vinez fails to establish that Sky Chefs' proffered

---

[17]Sky Chefs cites multiple cases in support of its argument that "an employer's duty to accommodate under the ADA is the same whether it is reviewed in light of reassigning an employee to a vacant position or assigning an employee to a vacant position after he or she returns from approved medical leave."  Docket No. 26 at 14 n.4. The Court need not consider what, if any obligation Sky Chefs had to accommodate Ms. Vinez in this respect because Ms. Vinez brings only a disparate treatment claim and does not, strictly speaking, argue that Sky Chefs breached its duty to accommodate or that the ADA required it to "reserv[e] a job opening for [her] possible return . . . ."  *See Crano v. Graphic Packaging Corp.*, 65 F. App'x 705, 708 (10th Cir. 2003) (unpublished).

reason for her layoff was pretextual. *See EEOC v. PVNF, LLC*, 487 F.3d 790, 800 n.5 (10th Cir. 2007) ("Regardless of whether [courts] analyze the plaintiff's evidence in reference to the prima facie case or the business justification versus pretext inquiry, . . . if the court correctly concludes that the evidence of discrimination/pretext fails as a matter of law, summary judgment for the defendant is the proper result." (internal citations and quotations omitted)).  To demonstrate pretext, Ms. Vinez must produce evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for" its termination decision.  *See Crowe v. ADT Security Servs., Inc.*, 649 F.3d 1189, 1196 (10th Cir. 2011).  The Supreme Court has held that, "[i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000).  Such a showing, however, will not "*always* be adequate to sustain a jury's finding of liability" such as when "no rational factfinder could conclude that the action was discriminatory." *Id.* at 148 (emphasis in original).  Thus, the Tenth Circuit has held that, in order to draw an inference of the type described in *Reeves*, "the factfinder must be able to conclude, based on a preponderance of the evidence, that *discrimination was a determinative factor* in the employer's actions – simply disbelieving the employer is insufficient." *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (quotation omitted, emphasis in original).  "[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143

31

(quotation omitted).

Here, Mr. Mower's stated reason for Ms. Vinez' layoff is that there "were no open positions available at the time she was medically cleared to return to work," Docket No. 26-2 at 1, ¶ 4, a reason which is not facially prohibited.  Ms. Vinez has identified a weakness in this rationale.  Ms. Vinez correctly points out that, as of the day she was medically cleared to return to work, the FPM position was open.  As discussed above, Ms. Vinez has established a dispute of fact as to whether, prior to July 3, 2012, Mr. Mower knew that Ms. Vinez was ready to return to work.  Docket No. 36 at 12, ¶¶ 44-45.  The FPM position did not, however, remain open until Ms. Vinez was laid off on September 14, 2012.  On July 2, 2012, Mr. Mower was directed to implement Project Laser, which provided for the elimination of Mr. Moon's position.  The implementation document contemplated that Mr. Moon could, as applicable to the Denver CSC, be reassigned or terminated.  Docket No. 32-1 at 5.  In accordance with the implementation document, Mr. Mower offered Mr. Moon the open FPM position.  *See* Docket No. 36-6 at 10-11, pp. 18:22-19:12.  Ms. Vinez does not argue or identify specific evidence suggesting that Project Laser was itself a discriminatory policy, that Mr. Mower acted contrary to the implementation document by offering Mr. Moon the open FPM position, or that Mr. Mower's decision to offer Mr. Moon the FPM position was based upon FMLA- or ADA-related animus towards Ms. Vinez.  As Sky Chefs points out, there is no suggestion that Ms. Vinez was more qualified for the FPM position than Mr. Moon, a fact which, if established, could otherwise suggest that the decision to offer Mr. Moon the FPM position was pretextual.  *See* Docket No. 38 at 8.  After Mr. Mower offered Mr. Moon the FPM position, it does not appear that Mr. Mower

32

considered the FPM position to be open.  *See* Docket No. 36-6 at 10-11, pp. 18:24-
19:12; *Young*, 468 F.3d at 1250 ("[t]he relevant inquiry is not whether the employer's
proffered reasons were wise, fair or correct, but whether it honestly believed those
reasons and acted in good faith upon those beliefs").  Thus, although Ms. Vinez
identified an initial weakness or inconsistency in Sky Chefs' proffered reason, that
weakness or inconsistency did not persist or remain unexplained during the entire
relevant time period.  Moreover, only some situations support an inference of
discrimination from the falsity of the employer's explanation.  *See Reeves*, 530 U.S. at
147.  Given the fact that Sky Chefs was undergoing a corporate restructuring, the
circumstances of this case do not lend themselves to that inference and would not allow
a reasonable factfinder to infer that Sky Chefs is dissembling to cover up a
discriminatory purpose.

Ms. Vinez' remaining arguments on the issue of pretext – that Sky Chefs'
proffered reason contradicts its Rule 30(b)(6) deposition testimony as well as the
Project Laser implementation document and reduction in force policy – share a similar
flaw.  Even assuming that those arguments, alone or collectively, are sufficient for a
factfinder to disbelieve Sky Chefs' proffered reason, Ms. Vinez does not identify, with
specific citation to the record, sufficient evidence upon which a reasonable juror could
properly conclude that FMLA retaliation or ADA discrimination was a determinative
factor in Mr. Mower's decision to lay off Ms. Vinez.  *See Young*, 468 F.3d at 1250.  As
discussed above, no such evidence is apparent to the Court.  Thus, even if the Court
were to bypass the prima facie stage of Ms. Vinez' claims, Ms. Vinez fails to establish
pretext.

**D.  Outrageous Conduct**

Having dismissed Ms. Vinez' claims arising under federal law, the Court turns to

her state law claim for outrageous conduct.  The complaint and the final pretrial order

do not allege a proper basis for exercising subject matter jurisdiction over this claim.

*See, e.g.*, Docket No. 1 at 1; Docket No. 41 at 1.  In the absence of jurisdictional

allegations to the contrary, the Court finds that 28 U.S.C. § 1367 is the only basis upon

which the Court could potentially exercise jurisdiction over Ms. Vinez' outrageous

conduct claim.  However, this begs the question of whether the Court should exercise

supplemental jurisdiction over Ms. Vinez' outrageous conduct claim.  While courts may

exercise supplemental jurisdiction over state law claims if there is otherwise a

jurisdictional basis for doing so, 28 U.S.C. § 1367(c)(3) states that a court may decline

to exercise jurisdiction over such claims if "the district court has dismissed all claims

over which it has original jurisdiction."  When § 1367(c)(3) is implicated in the Tenth

Circuit, courts are advised to dismiss pendent state law claims "'absent compelling

reasons to the contrary.'"  *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010)

(quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995) (reversing the district court's

grant of summary judgment on state law claims); *Endris v. Sheridan Cnty. Police Dep't*,

415 F. App'x 34, 36 (10th Cir. 2011) ("any state-law claims for assault and battery or

mental and emotional injury were inappropriate subjects for the exercise of pendent

jurisdiction where all federal claims had been dismissed").  *But see Henderson v. Nat'l*

*R.R. Passenger Corp.*, 412 F. App'x 74, 79 (10th Cir. 2011) (finding no abuse of

discretion in trial court's decision to retain jurisdiction over state law claims after plaintiff

voluntarily dismissed claims arising under federal law).  Finding no compelling reason here to retain jurisdiction, the Court will dismiss Ms. Vinez' remaining claim for outrageous conduct without prejudice.  *See* Colo. Rev. Stat. § 13-80-111 (permitting claims properly commenced within the statute of limitations to be re-filed if involuntarily dismissed because of lack of jurisdiction); *Dalal v. Alliant Techsystems, Inc.*, 934 P.2d 830, 834 (Colo. App. 1996) (interpreting 28 U.S.C. § 1367(d) as tolling the statute of limitations while claim is pending in federal court); *see also City of Los Angeles v. Cnty. of Kern*, 328 P.3d 56, 65 (Cal. 2014) (noting that interpretations of § 1367(d) vary between jurisdictions).

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Sky Chefs' Motion for Summary Judgment [Docket No. 26] is **GRANTED**.  It is further

**ORDERED** that Ms. Vinez' claims for violation of the FMLA and ADA are **DISMISSED** with prejudice.  It is further

**ORDERED** that Ms. Vinez' claim for outrageous conduct is **DISMISSED** without prejudice.  It is further

**ORDERED** that this case is **DISMISSED** in its entirety.

DATED August 3, 2015.

BY THE COURT:

 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge

35